**John PIERCE, Plaintiff–Appellee,**

**v.**

**F.R. TRIPLER & CO. and Hartmarx Specialty Stores, Inc., Defendants–Appellants.**

**No. 210, Docket 91–7437.**

United States Court of Appeals, Second Circuit.

Argued Sept. 17, 1991.

Decided Jan. 28, 1992.

Watson B. Tucker, Chicago, Ill. (Michael P. Rissman, Amy B. Folbe, Mayer, Brown & Platt, Chicago, Ill., Allen Green, Bell, Kalnick, Beckman, Klee & Green, New York City, of counsel), for appellants.

Debra L. Raskin, New York City (Cary A. Bricker, Vladeck, Waldman, Elias & Engelhard, of counsel), for appellee.

Before MESKILL, PIERCE and MAHONEY, Circuit Judges.

MESKILL, Circuit Judge:

Appellants F.R. Tripler & Co. (Tripler) and its parent corporation, Hartmarx Specialty Stores, Inc. (collectively "Hartmarx"), appeal from a judgment of the

United States District Court for the Southern District of New York, Knapp, *J.*, 770 F.Supp. 118, in favor of plaintiff-appellee John Pierce. The case was tried to a jury which returned a verdict for Pierce, finding that Hartmarx had willfully violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (ADEA). Pursuant to 29 U.S.C. § 626(b), the district judge doubled the back pay damage award. The district judge also imposed sanctions under Fed.R.Civ.P. 11 against Hartmarx because of its attempts to introduce evidence of the job offer made to Pierce after he had been discharged. The defendants appeal the judgment, contending that the district judge erred by (1) denying its motion for judgment notwithstanding the verdict; (2) wrongfully instructing the jury; (3) excluding the proffered evidence concerning the job offer; and (4) wrongfully imposing sanctions under Rule 11.

We affirm the judgment and damage award but reverse the imposition of Rule 11 sanctions.

## BACKGROUND

The plaintiff in this action, John Pierce, was 63 years old in 1986 and had been employed by Tripler, a wholly owned subsidiary of Hartmarx Specialty Stores, Inc., as its controller for approximately twenty years. In 1985 Hartmarx planned a company wide reorganization of its operations, which included a reduction in its workforce and a consolidation of its financial operations. As a result of this reorganization, Pierce's position was eliminated and in May 1986 he was discharged.

The age discrimination charge here does not flow from that discharge, however. Rather, it stems from Tripler's failure to promote Pierce to the position of General Manager, a position available at the time of his discharge because of the retirement of the then General Manager, Andrew Kiszka. That position was awarded to Peter Van Berg, age 39.

Hartmarx had hired Van Berg in January 1984, intending to groom him to take over Kiszka's position upon the latter's retirement. In the early 1980s Kiszka had listed Pierce as an individual who could assume the duties of General Manager. Kiszka testified that Pierce was not considered as Kiszka's successor in 1983–84 in part because Hartmarx was seeking "a fairly young person."

In early 1986 Kiszka announced that he intended to retire that summer. After Kiszka's announcement, Hartmarx management reviewed Pierce's personnel file and evaluations in determining who would become the next General Manager of Tripler. They also considered at least one other individual for the position in addition to Van Berg. Van Berg, whose position had also been eliminated in the reorganization, was ultimately named General Manager.

In May 1986 Kiszka told Pierce that his position had been eliminated in the restructuring and that he was to be discharged. Pierce told both Kiszka and Michael Regan, the Hartmarx official responsible for the supervision of Tripler, that he was more qualified than Van Berg to be General Manager and that he should be hired for that position. During one discussion, Regan told Pierce not to get angry with him because he, Regan, was young.

Thereafter, Pierce's attorney, Debra Raskin, informed Tripler by mail that she believed that Pierce had a meritorious age discrimination claim in the denial of the promotion, but that Pierce was reluctant to litigate the matter. Raskin proposed a meeting with Tripler in order to "work out an amicable resolution of this matter." Carey Stein, General Counsel for Hartmarx Specialty Stores, answered Raskin, stating that while he did not believe that Pierce had a claim, he would be happy to speak to Raskin in order to arrive at "an 'amicable resolution' of any claim he [Pierce] may have."

In early June 1986 Raskin and Stein discussed Pierce's situation but did not come to any agreement. In late July 1986 Pierce filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging age discrimination. On September 25, 1986, Stein telephoned Raskin offering

Pierce a financial position at the Long Island City warehouse of Wallachs, another Hartmarx subsidiary. This conversation engendered some confusion as to whether Pierce would be required to waive his age discrimination claim in order to accept the position.

After this conversation, Raskin wrote Stein stating: "If you are willing to make this offer of employment ... without regard to the settlement of Mr. Pierce's claims, he would, of course, be willing to give it serious consideration." Stein responded by letter, stating that he was confused by Raskin's reference to the offer being "in exchange" for a release. He claimed that he had said that he would not offer the job "just for the purposes of settling the lawsuit," and that he still thought the lawsuit groundless. He further stated that, although the Wallachs position might already have been offered to someone else, if Pierce were still interested Raskin should call and Stein would check back at Wallachs.

This letter was followed a week later by another from Raskin restating her understanding of the telephone call, which was that the job was conditioned on a release of all claims against the company. Stein wrote back to Raskin, implying that the offer had not been conditioned on such a release, but that they should "agree to disagree about what was said in the phone conversation and get on with the lawsuit if that's what's to be." Pierce then initiated this action in the Southern District of New York.

## DISCUSSION

1. *Hartmarx's Motion for Judgment Notwithstanding the Verdict*

At the close of plaintiff's case, Hartmarx moved pursuant to Fed.R.Civ.P. 50(a), unsuccessfully, for a directed verdict in its favor. This motion was renewed at the close of its own case, and, after the jury returned a verdict for Pierce, Hartmarx moved for judgment notwithstanding the verdict pursuant to Rule 50(b). Both motions were denied. Hartmarx appeals, claiming that there was not sufficient evidence presented at trial from which a jury could conclude that Hartmarx had discriminated against Pierce because of his age.

■ The denial of a motion for judgment notwithstanding the verdict is a ruling of law subject to *de novo* review. The test is whether the evidence presented at trial, taken in the light most favorable to the prevailing party, was sufficient to allow a reasonable juror to arrive at the challenged verdict. *Schwimmer v. SONY Corp. of America*, 677 F.2d 946, 951–52 (2d Cir.), *cert. denied*, 459 U.S. 1007, 103 S.Ct. 362, 74 L.Ed.2d 398 (1982). We believe that there was evidence presented from which a reasonable juror could find that Hartmarx denied Pierce the job of General Manager because of his age.

■ Hartmarx claims that in order to be held liable for age discrimination for failing to promote Pierce to General Manager, that position must have been available at the time Pierce applied for it. This unremarkable proposition is clearly correct. *See, e.g., Marshall v. Airpax Elecs.*, 595 F.2d 1043, 1044–45 (5th Cir.1979) (where position already filled there is no claim for discriminatory denial of position). Hartmarx claims that the undisputed evidence shows that Pierce did not apply for the job when it was available.

Hartmarx claims that the decision as to Kiszka's eventual successor was made in late 1983 and that Pierce did not apply for the position at that time. However, there was evidence that the 1983 decision was only tentative, that Van Berg's interim performance had been less than spectacular, and that Hartmarx management revisited the decision after Kiszka announced his retirement and considered at least one other individual for the position. The jury could reasonably have concluded that the company made the final decision as to Kiszka's replacement in 1986 after Pierce made known his interest in filling the vacancy.

The company claims that Pierce clearly did not apply for the position of General Manager in 1986. Although Pierce admittedly did not fill out a formal application for the General Manager's position,

"whether a formal application needs to be made for a high-level executive position is a factual question dependent on the particular institutional structure and practices of the employer." *Goodman v. Heublein, Inc.*, 645 F.2d 127, 131 (2d Cir.1981). There was evidence before the jury that there was no such formal application procedure in the Hartmarx organization and that Pierce's desire for the position of General Manager was communicated to Hartmarx management by Pierce himself and by Kiszka. Moreover, there was evidence that Hartmarx gave some perfunctory consideration to Pierce in making its final decision. The evidence in this regard was sufficient to support the jury's verdict.

## 2. *Jury Instructions*

### a. Pretext

Hartmarx requested a jury instruction that the plaintiff has the burden of proving by a preponderance of the evidence that defendants' stated reasons for their actions were merely a pretext for age discrimination. The court refused to give this instruction, stating that pretext was not a part of the case.

Hartmarx relies on *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which established shifting burdens of production on the parties to an intentional employment discrimination case. *McDonnell Douglas* held that once a plaintiff establishes a prima facie case of employment discrimination by demonstrating that an adverse employment decision was made in circumstances giving rise to an inference of improper discrimination the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its actions. *Id.* at 802, 93 S.Ct. at 1824; *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). Once this burden is met, the plaintiff must demonstrate that the proffered justification is merely a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825; *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093.

Hartmarx argues on appeal that the jury should have been told that Pierce had the burden of proving that the reorganization was a pretext for age discrimination. This argument entirely misapprehends the nature of Pierce's claim. Pierce does not claim that the elimination of his job was discriminatory. He claims that the refusal to appoint him to the open General Manager position was motivated by his age. There was no need for Pierce under this theory to show that the reorganization was pretextual, and therefore the failure to give such an instruction to the jury was not error.

■ The task of the jury in an age discrimination case is to determine whether the challenged employment decision would have been the same but for the plaintiff's age. *Hagelthorn v. Kennecott Corp.*, 710 F.2d 76, 83 (2d Cir.1983). The judge's instructions adequately apprised the jury of this task.

### b. Willfulness

■ Hartmarx also contends that the judge did not properly instruct the jury on the issue of whether the company had willfully violated the ADEA. The ADEA provides for double damages when the employer willfully violates its provisions. 29 U.S.C. § 626(b). The judge instructed the jury not to consider the issue of willfulness unless and until it determined that the company had intentionally used age as a factor in making the decision not to hire Pierce as General Manager of Tripler. The judge told the jury that if they made such a determination they were next to determine whether the company had knowledge that using age in such a manner violated the ADEA. Therefore, in order to find a willful violation, the jury had to find that the company intentionally engaged in conduct that it knew to violate the ADEA. Under any acceptable interpretation of "willful," such conduct qualifies.

In *Trans World Airlines v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), the Court resolved a split among the circuits concerning the quantum of knowledge necessary for a willful violation of the

ADEA. The Court held that an employer has willfully violated the ADEA when it "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Id.* at 126, 105 S.Ct. at 624. The Court rejected a proposed standard that would have found an employer guilty of a willful violation whenever the employer knew of the potential applicability of the ADEA. *Id.* at 127–28, 105 S.Ct. at 624–25. The Court reasoned that such a broad standard "would result in an award of double damages in almost every case," a result not intended by Congress. *Id.* at 128, 105 S.Ct. at 625.

■ Hartmarx argues that the same result will occur if we sanction the jury charge in this case. Hartmarx requested an instruction that would have allowed the jury to consider its good faith. However, in this trial there was no evidence of good faith. This was not a disparate impact case, where the defendant could claim ignorance of the correlation between its selection mechanism and age. Hartmarx did not claim that age was a bona fide occupational qualification, as in *Thurston,* nor did it claim that it did not know that Pierce was covered by the ADEA. Where a party presents no evidence to support a particular theory of his case, he has no right to a jury instruction on that point. *City of New York v. Pullman Inc.,* 662 F.2d 910, 917 (2d Cir.1981), *cert. denied sub nom. Rockwell Int'l Corp. v. City of New York,* 454 U.S. 1164, 102 S.Ct. 1038, 71 L.Ed.2d 320 (1982). The jury found that Hartmarx intentionally judged Pierce's qualification for the promotion by his age, and that it knew that to do so violated the ADEA. Therefore, Hartmarx "knew ... its conduct was prohibited by the ADEA." *Thurston,* 469 U.S. at 126, 105 S.Ct. at 624. We do not believe that this jury reached a result not contemplated by Congress.

### 3. *Evidence of the Wallachs Job Offer*

■ Hartmarx attempted before trial to have evidence of the subsequent job offer it made to Pierce ruled admissible. The district judge refused to allow the evidence,

and Hartmarx contends on appeal that this disallowance was reversible error.

Hartmarx argued that the evidence was relevant for two purposes. First, Pierce's rejection of the job offer purportedly showed that Pierce had failed to take reasonable steps to mitigate his damages, thus limiting his claim for back pay. Second, evidence of the job offer made in September 1986 allegedly was relevant to Hartmarx's state of mind in May when it denied Pierce the General Manager position. Pierce opposed the introduction of the evidence, contending that the offer took place in the course of settlement negotiations and thus was inadmissible under Fed. R.Evid. 408. The district court held a hearing and determined that, because the offer was not "unambiguously unconditional," the evidence was not admissible for either purpose proposed by Hartmarx. The district court did not address the Rule 408 issue.

■ In order to show a failure to mitigate damages evidence of the failure must first be admissible. Fed.R.Evid. 408 states:

Evidence of (1) furnishing or *offering or promising to furnish,* or (2) accepting or offering or promising to accept, *a valuable consideration in compromising or attempting to compromise a claim* which was disputed as to either validity or amount, *is not admissible to prove liability for or invalidity of the claim or its amount.* Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence . otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

(emphasis added). Evidence that demonstrates a failure to mitigate damages goes to the "amount" of the claim and thus, if the offer was made in the course of com-

promise negotiations, it is barred under the plain language of Rule 408. Under Fed. R.Evid. 104(a) preliminary factual questions concerning the admissibility of evidence, such as whether an offer was made in the course of settlement negotiations, are to be determined by the court. *See Mundy v. Household Finance Corp.*, 885 F.2d 542, 546–47 (9th Cir.1989) (district court determines whether offer is within the scope of Rule 408).

It is often difficult to determine whether an offer is made "in compromising or attempting to compromise a claim." *See* Brazil, *Protecting the Confidentiality of Settlement Negotiations,* 39 Hastings L.J. 955, 960–66 (1988). Both the timing of the offer and the existence of a disputed claim are relevant to the determination. *Cassino v. Reichhold Chemicals,* 817 F.2d 1338, 1342–43 (9th Cir.1987) (offer of severance pay conditioned on waiver of age discrimination claim made contemporaneous with discharge not protected by Rule 408), *cert. denied,* 484 U.S. 1047, 108 S.Ct. 785, 98 L.Ed.2d 870 (1988); *Big O Tire Dealers v. Goodyear Tire & Rubber Co.,* 561 F.2d 1365, 1372–73 (10th Cir.1977) (correspondence between parties prior to the filing of an action held "business communications" rather than "offers to compromise" and thus outside scope of Rule 408), *cert. dismissed,* 434 U.S. 1052, 98 S.Ct. 905, 54 L.Ed.2d 805 (1978). However, where a party is represented by counsel, threatens litigation and has initiated the first administrative steps in that litigation, any offer made between attorneys will be presumed to be an offer within the scope of Rule 408. The party seeking admission of an offer under those circumstances must demonstrate convincingly that the offer was not an attempt to compromise the claim.

The district court here did not make an explicit determination as to the admissibility of the evidence of the job offer under Rule 408. However, later in imposing Rule 11 sanctions on Hartmarx the district court stated that the offer was conditioned on the release of Pierce's claims, which is another way of saying that the job offer was an attempt to compromise a claim. Therefore, under the plain language of Rule 408,

evidence of the job offer was not admissible to show Pierce's failure to mitigate damages.

Hartmarx, however, urges us to look behind the language of Rule 408 to its purposes. The Advisory Committee on Proposed Rules stated that the exclusion of evidence of compromise offers "may be based on two grounds. (1) The evidence is irrelevant, since the offer may be motivated by a desire for peace rather than from any concession of weakness of position.... (2) A more consistently impressive ground is promotion of the public policy favoring the compromise and settlement of disputes." Fed.R.Evid. 408, Notes of Advisory Committee on Proposed Rules. Hartmarx contends that neither of these policies would be advanced where, as here, it is the offeror seeking to introduce evidence of the offer. If the offeror is introducing the evidence, according to Hartmarx, we should not worry that the evidence will be unfairly viewed as a concession of weakness of the offeror's position. Similarly, argues Hartmarx, parties will not be discouraged from free and frank settlement discussions by the knowledge that they may introduce their own statements at trial.

Hartmarx relies on a recent decision by the Supreme Court of Washington that supports its position. In *Bulaich v. AT & T Information Sys.,* 113 Wash.2d 254, 778 P.2d 1031 (1989) (in banc), the court held that Washington's Evidence Rule 408, which mirrors Federal Rule 408, did not bar admission of a job offer in similar circumstances. The court stated that "when the settlement offeror is the same party attempting to gain the admission of the settlement letter into evidence, the threat of admissibility should not be a deterrent to the articulation of a settlement proposal." 778 P.2d at 1036. While the reasoning of *Bulaich* is attractive, we find it unpersuasive.

We believe that admission into evidence of settlement offers, even by the offeror, could inhibit settlement discussions and interfere with the effective administration of

justice. As the circumstances under which this issue arose in the district court suggest, widespread admissibility of the substance of settlement offers could bring with it a rash of motions for disqualification of a party's chosen counsel who would likely become a witness at trial.

The issue of admissibility of the job offer here first came before the district court when the defendant's attorney, Hartmarx General Counsel Carey Stein, requested from the court permission to withdraw as trial counsel because he intended to testify as to the substance of the job offer. Under the ABA Code of Professional Responsibility (DR 5–102(A)) and the ABA Model Rules of Professional Conduct (Rule 3.7), an attorney who ought to be called as a witness on behalf of his client must withdraw from representation at trial. Stein's testimony would likely have necessitated rebuttal testimony from Pierce's attorney, Debra Raskin, thus disqualifying her, and perhaps her entire firm, from representing Pierce at trial. *Compare* DR 5–102(A) (entire firm disqualified) *with* Rule 1.10 (disqualification of attorney under Rule 3.7 not imputed to members of firm).

It is common for attorneys in pending litigation to be involved in efforts to settle the case before trial actually commences. It is also common that adverse parties have different memories as to what was said at such a meeting. If the substance of such negotiations were admissible at trial, many attorneys would be forced to testify as to the nature of the discussions and thus be disqualified as trial counsel. Indeed, one commentator has noted that the advocate-witness rule itself "means that no lawyer in a law firm that a client wished to serve as trial counsel in threatened litigation could safely attend negotiation sessions designed to avert trial or to renegotiate a contractual arrangement that had become unravelled, for fear of becoming a potential witness." Wolfram, *Modern Legal Ethics* (1986) at 379; *see also MacArthur v. Bank of New York,* 524 F.Supp. 1205, 1210 (S.D.N.Y.1981) ("Parties might well attempt to use this ethical rule, like others, as a litigation tactic.").

This undesirable result is largely avoided by excluding evidence of settlement negotiations. Hartmarx's interpretation of Rule 408 would discourage settlement discussions or encourage expensive and wasteful duplication of efforts by "negotiation counsel" and "trial counsel."

We prefer to apply Rule 408 as written and exclude evidence of settlement offers to prove liability for or the amount of a claim regardless of which party attempts to offer the evidence. *See Kennon v. Slipstreamer, Inc.,* 794 F.2d 1067, 1069 (5th Cir.1986) ("While a principal purpose of Rule 408 is to encourage settlements by preventing evidence of a settlement (or its amount) from being used *against* a litigant who was involved in the settlement, the rule is not limited by its terms to such a situation. Even where the evidence offered favors the settling party and is objected to by a party not involved in the settlement, Rule 408 bars admission of such evidence unless it is admissible for a purpose other than 'to prove liability for or invalidity of the claim or its amount.'") (citation omitted).

Hartmarx finally claims that, even if Rule 408 initially applies to the evidence of the job offer, the evidence is admissible under the "other purpose" exception contained in the final sentence of Rule 408. Hartmarx argues that the evidence bears on Hartmarx's state of mind at the time it refused to hire Pierce as General Manager, and that the evidence under this theory is not for the purpose of proving "liability for or invalidity of the claim or its amount."

In making this argument Hartmarx directs the court to *Wrenn v. Secretary, Dep't of Veterans Affairs,* 918 F.2d 1073 (2d Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1625, 113 L.Ed.2d 721 (1991). In that case we held that an offer, to a plaintiff claiming race and age discrimination, of the same job that he claimed had been wrongly denied him, along with seniority and full back pay, supported the employer's race- and age-neutral reason for failing to hire the plaintiff initially—namely, that it believed the plaintiff was not interested in the job that was available. In *Wrenn,*

however, we did not address whether the evidence of the offer was admissible under Rule 408. There is no indication that the issue ever was raised in that case. Merely because evidence is relevant does not qualify it for admission under Rule 408.

In a disparate treatment employment discrimination case the determinative question is whether, at the time of the adverse employment action, the defendant was motivated by impermissible factors. This is precisely the issue on which Hartmarx seeks to introduce the evidence of the job offer. Such evidence on the merits of the case goes to "liability for or invalidity of the claim" and thus does not fall within the "other purpose" exception to excludability under Rule 408.

■ The evidence of the Wallachs job offer was properly excluded by the district court, albeit for the wrong stated reason as we explain below. The evidence should have been excluded under Rule 408. We may affirm on any ground for which there is a record sufficient to permit conclusions of law, including a ground not relied on by the district court. *See, e.g., Larsen v. NMU Pension Trust*, 902 F.2d 1069, 1070 n. 1 (2d Cir.1990) (citing *Alfaro Motors v. Ward*, 814 F.2d 883, 887 (2d Cir.1987)).

### 4. *Rule 11 Sanctions*

Following trial, the district court imposed sanctions on Hartmarx under Fed.R.Civ.P. 11 for its pretrial attempts to admit evidence of the job offer. The court held that no attorney could in good faith have argued that the evidence was admissible. The district court therefore imposed attorney's fees and a $3,000 fine on Hartmarx for this violation. Hartmarx appeals, claiming that its position in seeking the introduction of the evidence was not without merit and that the sanctions were therefore unwarranted. We agree.

Rule 11 states that every paper must be signed by a party or its attorney and that such a signature constitutes a certificate that "to the best of the signer's knowledge,

information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed.R.Civ.P. 11.

■ At the outset, we recognize that "an appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990). However, "this standard [does] not preclude the appellate court's correction of a district court's legal errors, e.g., ... relying on a materially incorrect view of the relevant law in determining that a pleading was not 'warranted by existing law or a good faith argument' for changing the law. An appellate court would be justified in concluding that, in making such errors, the district court abused its discretion." *Id.* 110 S.Ct. at 2459; *see In re Cohoes Industrial Terminal*, 931 F.2d 222, 227 (2d Cir.1991).

■ The district court based its imposition of Rule 11 sanctions on several interrelated factors. First, the court noted that a previous judge in the same case [1] had held as a matter of law that the communications concerning the offer did not constitute an "unambiguously unconditional" offer. Second, the court expressed its agreement with that ruling, stating that "any other conclusion would be absurd." Finally, the court was influenced by differences between Stein's testimony in a hearing to determine the admissibility of the evidence and his statements in his affidavits.

■ In applying the "unambiguously unconditional" standard in determining whether the evidence was admissible to show failure to mitigate damages, the prior judge applied an incorrect legal standard. A victim of age discrimination, like a victim

---

**1.** The preliminary evidentiary motion was heard and decided by Judge Wood. The case there-

after was transferred to Judge Knapp.

of ethnic, sexual or religious discrimination, is under a duty to use reasonable efforts to mitigate his or her damages by seeking alternate employment and by accepting reasonable offers of employment. *See Ford Motor Co. v. Equal Employment Opportunity Commission*, 458 U.S. 219, 231, 102 S.Ct. 3057, 3065, 73 L.Ed.2d 721 (1982); *Brooks v. Woodline Motor Freight, Inc.*, 852 F.2d 1061, 1065 (8th Cir.1988). An employer may toll the running of back pay damages by making an unconditional offer to the plaintiff of a job substantially equivalent to the one he or she was denied, even without an offer of retroactive seniority. *See Ford Motor Co.*, 458 U.S. at 232, 102 S.Ct. at 3066.

While an unconditional offer of a job substantially similar to the one denied the plaintiff may, as a matter of law, toll back pay, the ultimate issue in a mitigation of damages question is whether the plaintiff acted reasonably in attempting to gain other employment or in rejecting proffered employment.

"Generally, it is the duty of the trier of fact to weigh the evidence to determine whether a reasonable person would refuse the offer of reinstatement." *Fiedler v. Indianhead Truck Line*, 670 F.2d 806, 808 (8th Cir.1982). Whether an offer was unconditional for purposes of mitigation is similarly a question for the trier of fact. *Cf. Bruno v. W.B. Saunders Co.*, 882 F.2d 760, 770 (3d Cir.1989) (evidence sufficient to support jury's conclusion that offer was conditioned on release of job discrimination claim), *cert. denied sub nom. CBS, Inc. v. Bruno*, 493 U.S. 1062, 110 S.Ct. 880, 107 L.Ed.2d 962 (1990). The ambiguity of a job offer may affect its weight as evidence against a plaintiff, but not its relevance. There is no requirement that evidence of a job offer be "unambiguously" unconditional, as the district court required, in order to be admissible to show a failure to mitigate damages.

In imposing Rule 11 sanctions, the district court determined that no one could, in good faith, argue that the job offer was "unambiguously" unconditional. This is undoubtedly true. Under the proper legal standard, however, the question is whether any person could, in good faith, argue that the offer was simply unconditional regardless of the clarity with which its unconditionality was expressed. The letters, affidavits and testimony provide evidence from which a trier of fact could find that Pierce could have accepted the Wallachs job without giving up his age discrimination claim. Although the context and some wording in the letters point in the other direction, there was sufficient evidence of unconditionality on the record to support a good faith argument that there was a question of fact regarding the conditionality of the offer.

Finally, the district court relied on differences between Stein's affidavits and his testimony at the hearing before Judge Wood. In two of his affidavits Stein had stated, in response to an allegation made by Raskin, that "I have never said 'of course, we do not hire people who sue us.'" In the hearing before Judge Wood, Stein testified on direct examination that he had said "we do not *ordinarily* hire people who sue us." (emphasis added). Although we do not condone petty word games by attorneys, given the applicable legal standard, the word "ordinarily," if spoken, could dramatically change the meaning of the disputed sentence. A trier of fact could determine that Pierce's was not the ordinary case and that the offer was in fact unconditional.

We note that although we hold today that the evidence of the job offer was ultimately inadmissible under Rule 408, Hartmarx had a good faith basis for arguing otherwise. "[T]o constitute a frivolous legal position for purposes of Rule 11 sanction, it must be clear ... that there is no chance of success.... Thus, not all unsuccessful arguments are frivolous or warrant sanctions." *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 681, 112 L.Ed.2d 673 (1991). The mere fact that the Supreme Court of the State of Washington, in *Bulaich*, 113 Wash.2d 254, 778 P.2d 1031 (1989), has held that such evidence is admissible despite Rule 408 is enough, in the

absence of controlling authority to the contrary, to support a good faith argument for extension or modification of existing law.

 Pierce had also requested that the court impose sanctions because of an improper purpose of the motion, *i.e.,* to disqualify plaintiff's attorney and her law firm by forcing Raskin to testify at trial. Even if there is an arguable legal and factual basis for a motion, an attorney or party violates Rule 11 by presenting that motion to the court for an improper purpose. *See Cohen v. Virginia Elec. & Power Co.,* 788 F.2d 247, 249 (4th Cir.1986) (motion interposed solely for purposes of determining whether opponent would oppose motion, with preconceived plan to withdraw motion if opposed, violated Rule 11). Certainly, if the district judge found that Hartmarx sought to introduce the evidence in order to disqualify Pierce's attorney then Rule 11 sanctions would have been appropriate. However, the judge made no such finding here and the sanctions cannot be upheld on appeal on that ground.

The imposition of Rule 11 sanctions was based largely on an incorrect legal standard regarding one basis for the admissibility of evidence regarding the job offer. Therefore, we hold that the district court abused its discretion in imposing sanctions on that basis and we reverse the order to that effect.

### CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed in all respects except that the imposition of sanctions under Rule 11 is reversed. The parties shall bear their own costs.