Richard W. WALSH, Plaintiff,

v.

**FIRST UNUM LIFE INSURANCE COMPANY, Defendant.**

No. 96–CV–0037C(H).

United States District Court, W.D. New York.

Nov. 10, 1997.

Walsh, Fleming & Chiacchia, P.C. (Andrew P. Fleming, of counsel), Blasdell, NY, for Plaintiff.

Bond, Schoeneck & King, LLP (Deborah H. Karalunas, of counsel), Syracuse, NY, for Defendant.

## DECISION and ORDER

CURTIN, District Judge.

This is an action to recover benefits due under an employee benefit plan and arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"). Plaintiff, Richard W. Walsh, claims that his disability benefits were wrongfully terminated. Before the court is defendant First UNUM Life Insurance Company's ("UNUM") motion *in limine* to exclude two settlement offers given to plaintiff on July 10, 1991, and July 13, 1994, while the plaintiff was still receiving disability benefits.

## BACKGROUND

Plaintiff Walsh seeks benefits under a long term disability policy issued on April 15, 1981, by defendant UNUM to his former employer, Schutte & Company of Buffalo, Inc. ("Schutte"). Plaintiff was formerly a Vice President and Manager at Schutte and became disabled on January 2, 1990. He was diagnosed as having a peripheral vascular disease.

Plaintiff, at all times during his employ with Schutte, was enrolled in an employee benefit program that was administered by defendant. On March 1, 1990, plaintiff made his first request for disability benefits to Schutte and defendant. Item 1, Exhibit C. On May 8, 1990, defendant informed plaintiff by letter that his "request for Long Term Disability Benefits has been approved." Item 1, Exhibit D. Plaintiff was told that he would receive supplementary claim forms on a periodic basis "for the purpose of providing [UNUM] with continuing proof of disability." *Id.* Thereafter, plaintiff received benefits without controversy until September 1994. Item 16.

In the meantime, on March 29, 1991, defendant informed plaintiff about the Plan's Work Incentive Benefit Program wherein plaintiff would receive "his entire pre-disability income during the first 12 months of an attempted return to work." Item 1, Exhibit

E. If plaintiff were able to return successfully, but to a lower paying job, then plaintiff's disability payments would be offset by the amount that his monthly benefit plus new salary exceeded his indexed pre-disability income. *Id.*

On July 10, 1991, while plaintiff was still receiving his long term disability benefits, defendant sent a letter to plaintiff which stated "UNUM is willing to offer you $85,000 as full and final settlement of your claim for Long Term Disability benefits.... This offer is in effect through, but not beyond July 31, 1992." Item 1, Exhibit F. Plaintiff did not accept this offer and continued to receive benefits without controversy.

Three years later, while plaintiff was still receiving his long term disability benefits, defendant sent plaintiff a letter on July 13, 1994 stating "UNUM is willing to offer you $150,000 as full and final settlement for your claim for disability benefits." Item 1, Exhibit G. Once again, plaintiff did not accept this offer and continued to receive benefits.

On September 6, 1994, defendant informed plaintiff by letter that "We have completed our review of your UNUM disability claim and .... [o]ur review has concluded that we are unable to continue your benefits." Item 1, Exhibit H. Defendant based its decision on a medical report which stated that plaintiff "can perform [his] sedentary occupation on a full-time basis." *Id.*

Plaintiff immediately appealed this denial of his benefits. Item 1, Exhibit I. His primary physician, Dr. John Ricotta, also sent a letter to defendant stating that plaintiff's medical condition had remained unchanged since March 14, 1991. Item 1, Exhibit J. On February 13, 1995, Dr. Ellen Dickinson informed defendant that plaintiff was still suffering from a variety of psychiatric disorders and that he "is currently totally disabled." Item 1, Exhibit K.

On May 23, 1995, defendant informed plaintiff that it had approved "[b]enefits for disability due to mental illness." Item 1, Exhibit L.

On June 27, 1995, defendant informed plaintiff that it had completed review of his disability claim and that "[o]ur review has

concluded that we are denying all liability on your claim as of 2/95." Item 1, Exhibit M. Defendant's reason for the denial was that "we have no evidence of continued disability beyond 2/95." *Id.*

On August 15, 1995, defendant informed plaintiff that "[w]e have reviewed the additional information you recently sent us and regret that this was not sufficient to reverse our previous decision." Item 1, Exhibit N.

On October 31, 1995, defendant informed plaintiff that its June 27, 1995 denial of all benefits was final and "appropriate." Item 1, Exhibit O.

### DISCUSSION

At issue are defendant's settlement offers given to the plaintiff on July 10, 1991, and July 13, 1994, while plaintiff was still receiving disability benefits. Item 1, Exhibits F and G. Defendant argues that because evidence of settlement offers is not admissible under Federal Rules of Evidence ("FRE") 408, the court should exclude these two settlement offers from evidence. Item 12. Defendant contends that this evidence should be stricken from the complaint and that plaintiff should be precluded from introducing evidence of the two settlement offers, or anything related to them, at the trial of this action. *Id.*

Defendant bases its argument on FRE 408, "Compromise and Offers to Compromise," which states in relevant part:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount.

Fed.R.Evid. 408.

Defendant also bases its argument on *Affiliated Mfrs., Inc. v. Aluminum Co. Of America,* 56 F.3d 521 (3d Cir.1995), and argues that courts have consistently held evidence of settlement offers and negotiations inadmissible at trial and notes that this rule has been applied even when the settlement

offers and negotiations took place prior to the commencement of litigation. Item 12.

In ruling on this motion, the court acknowledges that "[t]he policy behind Rule 408 is to encourage freedom of discussion with regard to compromise." *Affiliated,* 56 F.3d at 526. However, defendant's reliance on *Affiliated* is misplaced because in the case at bar there was not a dispute at the time that these settlement offers were made, as is required by FRE 408. *See Pierce v. F.R. Tripler & Co.,* 955 F.2d 820, 827 (2d Cir.1992) ("Both the timing of the offer and the existence of a disputed claim are relevant to the determination [of whether an offer is made 'in compromising or attempting to compromise a claim'].").

In *Affiliated,* the Third Circuit upheld the District Court's exclusion of "certain documents and deposition testimony as evidence of settlement negotiations." *Affiliated,* 56 F.3d at 523. Among the items excluded was testimony concerning a meeting between the parties that occurred one year prior to commencement of the action and a second meeting that occurred six months prior to the commencement of the action. *Id.* at 523–25.

Notably, a dispute between the parties in *Affiliated already existed* at the time of the meetings in question "from a contract for design and fabrication of an automated greenline handling system. The system built under this contract was never put into production." *Id.* at 523. The parties *had already disagreed* prior to the commencement of the action over unpaid invoices for hardware costs totaling $280,000 and software costs totaling $208,130. *Id.* The Third Circuit excluded the evidence in question because "[t]he district court properly interpreted the scope of the term 'dispute' to include a clear difference of opinion between the parties here concerning payment of the two invoices." *Id.* at 528.

In contrast to *Affiliated,* neither a dispute, nor a clear difference of opinion, existed in

the case at bar at the time that defendant UNUM made the two settlement offers to plaintiff. Fatal to defendant's case is defendant's letter to plaintiff dated May 8, 1990 that states "[y]our request for Long Term Disability Benefits has been approved." Item 1, Exhibit D. This letter indicates that defendant did not dispute plaintiff's claim, as is required by FRE 408, but rather approved it. *See Pierce,* 955 F.2d at 827; *see also Alpex Computer Corp. v. Nintendo Company, Ltd.,* 1994 WL 139423 at *2 (S.D.N.Y. March 18, 1994) (emphasis added) ("Rule 408 protects these offers only if they were sent as part of an offer to compromise *disputed* claims.").[1]

The court is also persuaded of the absence of a dispute at the time of the settlement offers after reading defendant's letters to plaintiff and the affidavit of Carla Moore, a Senior Disability Analyst for First UNUM. In defendant's July 10, 1991, and July 13, 1994, letters, defendant merely offered plaintiff a lump sum rather than monthly payments regarding his claim. Item 1, Exhibits F and G. As explained by Ms. Moore in her affidavit, the two offers were made "in full and final settlement of plaintiff's claim for disability benefits." Item 14, ¶2. Ms. Moore further stated:

In each case, the offers were a compromise, based on a number of factors, including the records First UNUM had in its possession at the time concerning plaintiff. *Id.* ¶4.

As such, these settlement offers were really "'business communications' rather than 'offers to compromise' and thus outside the scope of Rule 408." *Pierce,* 955 F.2d at 827. Defendant UNUM did not state that it disputed plaintiff's claim or that "we are unable to continue your benefits" as it did in its September 6, 1994, letter to plaintiff. *Cf.* Item 1, Exhibit H. Rather, defendant merely offered to change the form of plaintiff's disability payment from monthly to lump sum in its letters dated July 10, 1991, and

1. The court notes that the court in *Alpex Computer Corp. v. Nintendo Co., Ltd.,* 770 F.Supp. 161 (S.D.N.Y.1991) the district court reconsidered its July 18, 1991 preclusion order on March 18, 1994 and concluded "that it erred in excluding some of the evidence under Rule 408 of the Federal Rules of Evidence." *Alpex Computer Corp. v. Nintendo Company, Ltd.,* 1994 WL 139423 at *1 (S.D.N.Y. March 18, 1994). On reconsideration, the *Alpex* court still held the evidence inadmissible, but instead relied on Rule 403 of the Federal Rules of Evidence. *Id.*

**932**

July 13, 1994, and did not dispute the merit of plaintiff's claim or his receipt of the payments themselves.

At oral argument on November 6, 1997, defendant's attorney argued that the letters at issue should be excluded under FRE 403, "Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time." Whether Rule 403 applies must await argument at trial.

### CONCLUSION

For the foregoing reasons, this court denies defendant UNUM's motion *in limine.*

So ordered.