[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO STRIKE SECOND COUNT OF COMPLAINT
This decision will discuss a motion to strike directed at the second count of the complaint. The second count references allegations of sex discrimination made in the first count regarding the way in which the plaintiff and other women were treated at the worksite and then goes on to make the following specific allegations regarding her termination:
"16. At the time of Etter's termination, Advest offered to continue her salary and benefits only through the end of her contract (with no severance pay), vest some of her stock, and pay $20,000 for relocation expenses. This offer was reduced to writing in a draft letter from Mr. Mullane on June 7, 2000. When Etter was given the draft, she was told by Mr. Rolevich that this was just a draft proposal — a place to begin — and that Etter should disregard the date.
17. Defendant's offer to Etter was significantly less than that previously offered to similarly-placed or lower male executives.
18. Etter did not accept Advest's severance offer but proposed an alternative offer. She also suggested that she stay on in another capacity at Advest.
19. Etter went on a scheduled vacation from July 16, 2000 until July 3, 2000. Upon her return, she was informed that she would be placed on a paid leave of absence through the end of July, 2000. The offer of payment through the end of her contract term had been revoked. Etter was asked to leave the office that day and was not expected to return.
20. By a letter dated July 11, 2000, Etter was informed that Advest had decided to terminate her employment effective July 14, 2000.
21. Her treatment as well as the terms and conditions of severance CT Page 13705 offered to her were not equivalent to those offered to similarly-situated males who left Advest's employment voluntarily or involuntarily.
22. As a result of unequal terms and conditions in her employment, Etter has suffered significant economic losses and mental and emotional distress.
23. By its actions, the defendant discriminated against Etter on the basis of her gender in violation of FEPA." (Fair Employment Practices Act.)
The defendant claims the second count is legally insufficient because it does not allege a violation of the Connecticut Fair Employment Practices Act (FEPA). The complaint states the plaintiff was discriminated against in offers of severance. Section 46a-60 of the General Statutes, in pertinent, part says that it is an unlawful employment practice for an employer to discriminate against an individual . . . "in compensation, or in terms, conditions or privileges of employment because of the individual's . . . sex. . . ." The defendant concedes that discrimination in contract-based severance pay could be actionable. The defendant argues that "the mere offer of severance pay absent a contractual obligation to provide such a benefit is neither employment compensation nor a term, condition or privilege of employment," and thus not a FEPA violation. (Emphasis by defendant.)
The defendant goes on to argue that the employment contract is not attached to the complaint and "it is necessarily inferred that the severance offer alleged in the second count falls outside the terms" of that contract — "negotiations over severance concerned post-employment benefits' which necessarily fall outside FEPA because they are not made in consideration or contemplation of employment. What we have here is a "gift" or a "settlement offer." In fact, what was really involved is a settlement offer — if it was a gift why make a counteroffer and if a counteroffer was made by the plaintiff, "it's necessarily implied" that she was negotiating over consideration to be paid in exchange for a release of "all employment based claims."
In such a case, argues the defendant, any severance offer is a privilege, not a right and refusal to provide a privilege is not adverse action. Jackson v. Lyons Falls Pulp Paper, Inc., 865 F. Sup. 87
(ND NY, 1994), is cited for the proposition that such a refusal "does not form the basis of a retaliation claim," id. p. 95. Jackson is applicable here because the mere offer of severance to which the plaintiff was not entitled cannot form the basis of a discrimination claims any more than declining to give the plaintiff in Jackson severance pay and benefits CT Page 13706 could be characterized as retaliation for his filing an age discrimination claim. Jackson at pp. 94-95. Burlington Industries, Inc.v. Ellerth, 547 U.S. 742 (1998), is also referred to by the defendant. That case involved a claim of sexual harassment under Title VII and talked about the concept of a "tangible adverse employment action" and the principle that an employer may raise the absence of any such action as an affirmative defense to a claim for liability and damages under the federal act. The Ellerth court defined a tangible adverse employment action as a "significant change in employment status." The defendant here transfers this concept to § 46a-60 suits and argues if there is no such adverse action, a § 46a-60 claim is not viable. Severance pay cannot constitute an adverse employment action since when the severance offer was made in this case, the plaintiff had already been terminated.
Finally, the defendant argues that if FEPA's ambit extends to severance offers the time for filing a discrimination claim would have no end point — the mandatory time limits of § 46-82 would be undermined,Williams v. CHRO, 257 Conn. 258 (2001), is cited. The foregoing constitutes the defendant's substantive claim. The defendant also makes an evidentiary claim.
In addition to the foregoing, the defendant also argues that the second count relies on inadmissible evidence. Any offer made to the plaintiff would violate the "settlement" privilege and that privilege would be further compromised since the claim made anticipates evidence as to "offers made to similarly situated males." Section 4-8 of the Code of Evidence "guards against the use of settlement offers." Federal case law supports such a result as to the admissibility of settlement offers.Pierce v. Tripler Co., 955 F.2d 820 (Ca. 2, 1992). Besides recognition of the second count would jeopardize the privilege afforded confidential settlement communications with third parties — i.e., the male executives who got the better offers.
The court will try to address the issues raised by the defendant's motion and the plaintiff's response to it. In dealing with a motion to strike, a court must give to the complaint every reasonable inference to sustain its legal sufficiency. Amodio v. Cunningham, 182 Conn. 80, 82
(1980).
 (a)
The court will first address the claim raised by the defendant that the second contract of the complaint is not legally sufficient.
As noted, the defendant first argues that while discrimination in CT Page 13707 contract based severance pay could be actionable, the mere offer of such pay, absent a contractual obligation, does not represent employment compensation or a privilege of employment. The complaint states that "at the time of Etter's termination" she was made an offer regarding financial terms surrounding her termination and this offer was "significantly less than that previously offered to similarly placed or lower male executives." The Advest offer was characterized by the company as "a place to begin," "a draft proposal." Etter did not accept the Advest offer but presented an alternative. She was then fired upon her return from vacation and the original offer was revoked.
The court gives the accepted meaning to offer as used with regards to Etter and the referenced male employees. That is, absent withdrawal, it is subject to acceptance; there is no indication from the language of the complaint that the offer to the males was revoked.[1]
Whether severance is given pursuant to a contractual obligation or represents an offer or payment at the time of termination to which the employee has no contractual right, it cannot be categorically said that a privilege of employment is not involved. Thirty-five years ago, our court said in Mace v. Conde Nast Public, Inc., 155 Conn. 680, 683 (1967):
 "We have described severance pay as a kind of accumulated compensation for past services and a material recognition of their past value . . .; or, as a form of compensation for the termination of the employment relation, for reasons other than the displaced employee's misconduct, primarily to alleviate the consequent need for economic readjustment but also recompense him (or her) for certain losses attributable to the dismissal."
Viewed from this perspective, it would be difficult to understand how, generally speaking, a financial offer, even though not reflective of past contracted for salary arrangements, could be anything else but a privilege arising out of and having a nexus to the employment.
Connecticut's view of severance pay reflects the general view. In 27 Am.Jur.2d, "Employment Relationship," § 70, p. 612, it says:
 "The purpose of a severance plan is to protect employees from economic hardship and to reward them for past service to the company."
See Bennett v. Gill Duffus Chemicals, Inc., 699 F. Sup. 454, CT Page 13708 459 (S.D.N.Y. 1988); Gilbert v. Burlington Industries, Inc., 765 F.2d 320,325 (2d Cir. 1985); Bradwell v. GAF Corp., 965 F.2d 798, 801
(2d Cir. 1992).
It is true that employees are not entitled to severance pay unless a plan or contractual arrangement provides for it, as the foregoing cases indicate, but that is a separate question from whether a financial package offered upon termination should be characterized as a condition or privilege of employment under anti-discrimination laws. Those laws must be read as saying — if they are to make sense — that substantive rights as such are not guaranteed but if a benefit, by largess or contract, is offered or granted to one class of employees while they are employed or when they are told employment is terminated, then another class of employees cannot be denied the benefit on the basis of race, gender or creed. In other words, the offers made to the favored class — here, the male employees — according to the case law certainly seem to be a privilege arising out of the employment relationship and the failure to give a like offer to the discriminated against class — here, a female — by way of the anti-discrimination laws creates a like "privilege" in that class. That ought to be held to arise out of and be connected to the employment relationship.
It is true that merely because a statute has a broad ameliorative purpose its language cannot be stretched to cover situations or individuals that the legislature did not intend to cover, cf. Perodeauv. Hartford, 259 Conn. 729 (2002) (§ 46a-60 held to impose liability on employers but not individual employees). But the language of the act does not bar the application of the anti-discrimination statute to discriminatory practices involving noncontractual severance offers.
If § 46a-60 (a) only protects against discrimination when contractual severance pay is provided for, broad classes of employees would be unprotected — marginal workers not protected by severance policies in collective bargaining agreements or working for companies that do not have manuals setting forth such policies.
In addressing the issue before the court, it is helpful, finally, to turn to the federal employment anti-discrimination law as reflected in Title VII; our statute uses the same language as the federal act. In 45 Am.Jur.2d, § 603, at p. 601, it says:
 "The phrase `terms, conditions or privileges of employment' in Title VII is an expansive concept demonstrating a congressional intent to define CT Page 13709 discrimination in the broadest possible terms. In adopting it, Congress chose neither to enumerate specific instances of discriminatory practices nor to draw clear lines as to what are prohibited activities. Rather, it meant to allow for change in basic notions of what is permissible."
The article goes so far as to say:
 "Post-employment relationships that have a significant connection to the previous employment may qualify as a "term, condition or privilege of employment' under Title VII."
Commenting on Equal Employment Opportunity Commission v. South DakotaWheat Growers Association, et al, 683 F. Sup. 1302 (D.S.D., 1988), the Am.Jur. article notes that "a benefit plan required by state law to be provided to former employees was a `term condition or privilege of employment' because it was offered as a direct result of the employment relationship," see 683 F. Supp. at pp. 1304-1305. Whether severance is made pursuant to contract, state law, or as a result of the employer's own discretionary act, cannot change the fact that it is being "offered as a direct result of the employment relationship."
Nor will the characterization by the defendant, of what the plaintiff was offered or even received as a "settlement" offer require a different result. The fact alleged is that male employees, simply because they were males, were offered more by way of severance than the female plaintiff was offered. Whether that end point was reached by way of settlement, contract or employer largesse is not relevant to the discrimination claim because it arose out of and as a privilege of employment. The court concludes the second count sets forth a legally sufficient claim under FEPA.[2]
 (b)
The defendant also argues that § 4-8 of the Connecticut Code of Evidence bars the use of settlement offers as evidence of liability. That section provides:
"Sec. 4-8. Offers to Compromise
 (a) General rule. Evidence of an offer to compromise or settle a disputed claim is inadmissible on the issues of liability and the amount of the claim.
CT Page 13710
(b) Exceptions. This rule does not require the exclusion of:
 (1) Evidence that is offered for another purpose, such as proving bias or prejudice of a witness, refuting a contention of undue delay or proving an effort to obstruct a criminal investigation or prosecution, or
(2) statements of fact or admissions of liability made by a party."
Perhaps a too easy response to this position is to say that offers to compromise, though of limited relevance, cannot be categorically said to be completely irrelevant or immaterial, that is, of no evidentiary value. The same, for example, is true of subsequent repair evidence and much hearsay. The court, on a motion to strike, should not go outside the four corners of the complaint to speculate on what actions or failures by counsel to act might occur with regard to the introduction of this evidence at trial.
More to the point, it would seem, at least to the court, that the defendant misreads the complaint or perhaps reads too much into it. The offer which the plaintiff claims was discriminatory is not alleged to be the result of negotiation to "compromise or settle a disputed claim." The allegations of the complaint are that an offer by way of fiat was made to the plaintiff regarding severance, this offer was substantially less than given to similarly placed or lower male executives, and then was withdrawn without apparent discussion.
But the challenged offer has to be compared to other offers made to another discreet class of people under a discrimination claim. Because of this, the defendant also raises the concern that recognition of the second count would jeopardize the privilege afforded confidential settlement communications with third parties — here, the male employees whom the plaintiff claims got preferential treatment. At one point, the defendant argues that even if the male executives freely volunteered information to plaintiff about the nature and value of such offers, they could implicate the settlement privilege codified in §4-8." The defendant goes on to cite Pierce v. F.R. Trippler Co.,955 F.2d 820 (CA. 2, 1992), for the proposition that "admission into evidence of settlement offers, even by the offeror could inhibit settlement discussions and interfere with the effective administration of justice," id. pp. 827-828. In other words, even if the male executives raised no objection to the offers being made known, Advest could raise an CT Page 13711 objection if the offers made to the executives to compromise claims were sought to be introduced at trial. But that again leads to the problem with the defendant's position as regards § 4-8 and its reliance onPierce. The commentary to the rule in subsection (a) states that "evidence of an offer to compromise or settle a disputed claim is inadmissible to prove the validity or invalidity of the claim or its amount." Pierce was interpreting Rule 408 of the Federal Rules of Evidence and, at p. 827, set the following context for the application of that rule:
 "However, where a party is represented by counsel, threatens litigation and has initiated the first administrative steps in that litigation, any offer made between attorneys will be presumed to be an offer within the scope of Rule 408. The party seeking admission of an offer under those circumstances must demonstrate convincingly that the offer was not an attempt to compromise the claim."
Based on the bare bones allegations of the complaint how can the court conclude that the offers made to male executives were attempts "to compromise or settle disputed claims" for all the court knows they could have been at will employees, and to borrow a thought from the defendant offered in a different context, would certainly have no right to uncontracted for severance pay.
The motion to strike is denied for the foregoing reasons.
Corradino, J.