16-3140-cv
Shultz v. Shearith

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2016

(Argued: June 1, 2017  Decided: August 10, 2017)

Docket No. 16-3140-cv

ALANA SHULTZ,

*Plaintiff-Appellant*,

— v. —

CONGREGATION SHEARITH ISRAEL OF THE CITY OF NEW YORK, THE SPANISH AND
PORTUGESE SYNAGOGUE, MEIR SOLOVEICHIK, In his personal and professional
capacities, MICHAEL LUSTIG,  In his personal and professional capacities, BARBARA
REISS, In her personal and professional capacities,

*Defendants-Appellees*.

Before:

CABRANES and LYNCH, *Circuit Judges*, and MATSUMOTO, *District Judge.**

---

* Judge Kiyo A. Matsumoto, of the United States District Court for the Eastern
District of New York, sitting by designation.

Alana Shultz appeals from a judgment of the United States District Court for the Southern District of New York (J. Paul Oetken, *Judge*), dismissing her federal claims for sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), and interference with her rights under the Family and Medical Leave Act for failure to state a claim, and declining to exercise supplemental jurisdiction over her various claims under New York State and New York City law. The principal issue on appeal is whether a cause of action under Title VII can be based on notice to an employee of a termination of employment effective in approximately three weeks, that was revoked before it became effective. Because Supreme Court precedent compels the conclusion that it can, the judgment of the district court is VACATED in part and REMANDED for further proceedings consistent with this opinion. We AFFIRM the judgment in various other respects.

JEANNE CHRISTENSEN (Bryan L. Arbeit, *on the brief*), Wigdor LLP, New York, NY, *for Plaintiff-Appellant*.

VINCENT M. AVERY (Sarir Z. Silver, *on the brief*), Akerman LLP, New York, NY, *for Defendants-Appellees*.

GERARD E. LYNCH, *Circuit Judge*:

Plaintiff-appellant Alana Shultz appeals from a judgment of the United States District Court for the Southern District of New York (J. Paul Oetken, *Judge*), dismissing her federal claims for sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), and interference with her rights under the Family and Medical Leave Act ("FMLA") for failure to state a claim, and declining to exercise supplemental jurisdiction over her various claims

under New York State and New York City law. The principal issue on appeal is whether a cause of action under Title VII can be based on notice to an employee of a termination of employment effective in approximately three weeks, that was revoked before it became effective. Because Supreme Court precedent compels the conclusion that it can, the judgment of the district court is VACATED in part and REMANDED for further proceedings consistent with this opinion. We AFFIRM the judgment in various other respects.

## BACKGROUND

### I.      Factual Background

Because "a [court] ruling on a defendant's motion to dismiss a complaint must accept as true all of the factual allegations contained in the complaint," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007) (internal quotation marks omitted), we describe the facts as alleged in the complaint, drawing all inferences in the plaintiff's favor, *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015), and construing any ambiguities "in the light most favorable to upholding plaintiff's claim,"*Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016).

From 2004 to 2015, Shultz worked as the Program Director of Congregation Shearith Israel of the City of New York, the Spanish and Portuguese Synagogue

3

(the "Congregation"), a Jewish synagogue in New York City. Her position involved "planning and coordinating events" and assisting with the nursery school program. App'x at 31. On June 28, 2015, Shultz, who was pregnant at the time, was married. Prior to departing on her honeymoon, she informed Barbara Reiss, the Congregation's Executive Director, that she was pregnant, and asked that Reiss convey that information to the Congregation's rabbis.

Shultz returned from her honeymoon, visibly pregnant, on July 20, 2015. The next day, Reiss engaged Shultz in an extensive discussion about the pregnancy. Later that day, Reiss asked Shultz to meet with her, Meir Soloveichik, one of the Congregation's rabbis, and Michael Lustig, a member of its Board of Trustees. At that meeting, Reiss informed Shultz that her employment was terminated, effective August 14, 2015. Reiss explained that, due to the departure of one of the Congregation's rabbis, Shultz's position was being eliminated as part of a restructuring. Shultz had never before heard of any planned restructuring of the Congregation's staff, and no further details about the restructuring were provided at that meeting. Shultz told Reiss, Soloveichik and Lustig that her pregnancy would make it "extremely difficult, if not impossible, to obtain a new job." App'x at 36. Her statement was "met with complete

4

silence"; indeed, Soloveichik and Lustig "refused to speak to Ms. Shultz" at all, and Soloveichik "refused to look at, speak to or acknowledge [her] in any way" during the meeting . App'x at 35-36.

At the meeting, Reiss presented Shultz with a severance agreement, offering her six weeks of pay in exchange for a "a complete waiver of [her] right to commence an action for pregnancy or gender discrimination or a claim pursuant to the FMLA," but Shultz refused to sign it. App'x at 37. Believing that the restructuring was "a pretextual excuse to terminate her because [Reiss, Soloveichik, and Lustig] disapproved of the fact that she was pregnant at the time of her marriage," Shulz retained counsel. App'x at 37. Shultz continued to work at the Congregation, to complete various tasks, and help to transfer her responsibilities to other employees.

On July 30, 2015, Shultz's lawyer informed the Congregation's counsel that Shultz had retained counsel to pursue claims stemming from her termination. A few days later, on August 5, 2015, Reiss presented Shultz with a letter stating that the Congregation had "reinstated" the position of Program Director, and thus she would not be terminated on August 14, 2015. Shultz contends that this letter was "not a bona fide offer of unconditional reinstatement." App'x at 38. After the

rescission letter was received Shultz was subject to a "pattern and practice of repeat discrimination" by Reiss, Soloveichik, and Lustig, consisting of at least the following events: (1) speaking loudly enough to be overheard by Shultz, Reiss told Lustig in a telephone conversation that the Congregation "had a right" to disapprove of Shultz's pre-marital pregnancy and disparaged Shultz and her lawyers; (2) Shultz's name was removed from the Congregation's newsletters to the membership and from the employee list that was displayed on a wall outside the synagogue; (3) Reiss continued to demand that she complete her assigned tasks before the date of her previously scheduled termination, and to transition her responsibilities to other employees; and (4) Soloveichik and Lustig refused to speak with her. *Id.* at 38-40.

Shultz did not return to work after August 14, 2015, the date that she had originally been told that her position would be terminated. Nonetheless, the Congregation continued to issue paychecks to Shultz (which she did not deposit) and listed her in publications as the Program Director. This action was commenced on September 22, 2015, and the Congregation emailed its membership on September 25, 2015 stating:

> Congregation Shearith Israel categorically denies Ms.
> Shultz's allegations of discrimination or of doing

anything wrong. In addition, Congregation Shearith Israel did not terminate her employment. She continues to remain employed in the exact same title, receiving the exact same compensation and benefits that she had been receiving all along. Her claim of loss is fabricated and inaccurate. She has received (and continues to receive to this very day) every penny, including for health benefits – even though she has not been to work since August 14th. It is unfortunate that Ms. Shultz and her lawyers took advantage of the Synagogue's inability to respond to press inquiries in the hours before Yom Kippur.

App'x at 41.

## II.  Procedural History

Shultz brought this action against the Congregation, Reiss, Soloveichik, and Lustig (collectively, "Defendants"), asserting that Defendants (1) discriminated against her on the basis of her sex, and retaliated against her for taking action against such discrimination, in violation of Title VII and parallel provisions of New York State law and New York City law; (2) interfered with her exercise of rights under the FMLA; and (3) defamed her in violation of New York state law. Defendants moved to dismiss each claim under Federal Rule of Civil Procedure 12(b)(6). In an Opinion and Order dated August 15, 2016, the district court granted that motion, dismissing Plaintiff's federal claims for failure to state

7

a claim and declining to exercise supplemental jurisdiction over her claims under state and city law. This appeal followed.

## DISCUSSION

We "review[ ] *de novo* a district court's grant of a motion under Rule 12(b)(6) to dismiss a complaint for failure to state a claim upon which relief can be granted." *Doe*, 831 F.3d at 53 (internal quotation marks omitted).

## I.      Discriminatory Termination

Shultz's principal claim is that the notice of termination she received was itself an adverse employment action, despite its later revocation. We agree.

Title VII makes it unlawful for an employer to discriminate on the basis of sex with regard to the "terms, conditions, or privileges of employment" and prohibits an employer from depriving "any individual of employment opportunities or otherwise adversely affect[ing] his status as an employee" on the basis of sex. 42 U.S.C. § 2000e–2(a)(1)-(2). "Title VII's prohibition against sex discrimination applies to discrimination based on pregnancy." *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1343 (2015).

To state a claim for employment discrimination under Title VII, "a plaintiff must plausibly allege that (1) the employer took adverse action against him, and

8

(2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). For purposes of this appeal, Defendants do not dispute that Shultz has adequately alleged that their actions were motivated by hostility to her pregnant, unmarried state.[1] Rather, Defendants argue that, in light of the Congregation's attempt to rescind her firing in its letter of August 5, 2015, the communication to Shultz on July 21, 2015 that her position was being eliminated was not itself an adverse employment action.

The District Court ruled that "a rescinded termination does not constitute adverse employment action under Title VII," assuming that there had been no "material change in the conditions of employment." App'x at 103. Our Court, however, has not yet decided whether a notice of termination, which is rescinded before the termination is implemented, qualifies as an adverse employment action. This court has held that:

> A plaintiff sustains an adverse employment action if he
> or she endures a materially adverse change in the terms
> and conditions of employment. To be materially adverse

---

[1] Defendants may well dispute whether as a factual matter their actions were so motivated, and we intimate no view on whether Shultz will be able to substantiate her factual allegations.

> a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.

*Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (citations and internal quotation marks omitted) (ellipsis in original).

Shultz argues that informing an employee that she has been fired is the quintessential adverse employment action, in that it terminates (even if prospectively) her employment, occasioning both the psychological anxiety of unemployment and the costs associated with beginning a search for employment (and, where the employee believes she has been fired for discriminatory reasons, the costs of finding and retaining counsel to pursue appropriate legal action). Defendants argue in response that the tangible adverse consequences of firing are imposed only when the job is actually lost; during the interim period before the firing becomes effective, the employee continues to work in the same position and receive the same pay and benefits.

Each of those arguments has some intuitive appeal. We need not decide, however, as a matter of first impression, which argument better accords with the

10

statutory regime, because the answer follows directly from existing Supreme Court authority.

The Supreme Court has twice considered cases in which a notice of termination of employment preceded the effective date of the termination, in the context of determining, for purposes of the statute of limitations, when a cause of action for discriminatory termination accrues. In *Delaware State College v. Ricks*, 449 U.S. 250 (1980), a college instructor was informed in June 1974 that the faculty had voted to deny him tenure but, pursuant to the school's practice, he was given a one-year terminal contract, after which his employment would be terminated. *Id.* at 252-53. When he sued, alleging that the denial of tenure and consequent termination of his employment was motivated by his national origin, the college argued that his action was time-barred. To evaluate the statute of limitations argument, the Supreme Court considered when his cause of action had accrued, and the limitations period accordingly began. The Court held that the "proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." *Id.* at 258 (emphases and internal quotations marks omitted). The limitations period commences at "the time the [termination] decision was made and communicated to" the employee, even

11

when the date of termination is later than the date of notification. *Id.* The

Supreme Court subsequently applied the same rule in a non-tenure-related

termination case, holding in *Chardon v. Fernandez*, 454 U.S. 6 (1981) that, for

statute of limitations purposes, a notice of termination was actionable at the point

when "the operative decision was made – and notice given – in advance of a

designated date on which employment terminated." *Id.* at 8.

This "notice rule," as the Supreme Court described the *Ricks* and *Chardon*

holdings, means that the claim is actionable on the date "when the employer

notifies the employee he is fired, not on the last day of his employment." *Green v.*

*Brennan*, 136 S. Ct. 1769, 1782 (2016).[2] The Supreme Court's conclusion that a

discrimination claim accrues upon notice of termination, rather than upon the

implementation of that decision, necessarily implies that the notification of

termination qualifies as an adverse employment action. The Supreme Court has

not directly addressed whether a rescinded termination constitutes an adverse

employment action. But the conclusion that the notice of termination itself gives

---

[2] In *Green*, the Supreme Court applied the same "notice rule" in the context of a constructive discharge claim: "If an employee gives 'two weeks' notice' – telling his employer he intends to leave after two more weeks of employment – the limitations period begins to run on the day he tells his employer, not his last day at work." *Green*, 136 S. Ct. at 1782.

rise to a claim follows ineluctably from the Court's rulings regarding the limitations period, because a limitations period ordinarily commences "when the plaintiff has a complete and present cause of action," *Green,* 136 S. Ct. at 1776 (quoting *Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson,* 545 U.S. 409, 418 (2005) (internal quotation marks omitted)).

If the claim accrues at the time of notification of termination, however, rescission of the notice at a point after the cause of action has accrued cannot eliminate the adverse employment action that has already occurred, and negate an accrued claim for relief. Accordingly, we conclude that the notice of termination itself constitutes an adverse employment action, even when the employer later rescinds the termination.

That notifying an employee of a prospective termination of his or her employment constitutes an adverse employment action, however, does not deprive an employer's rescission of the notice of legal effect. Whether motivated by a genuine change of heart, or by a belated recognition of the possible legal consequences of its actions, an employer's good-faith decision to rescind a previously-announced termination of employment, like an offer of restored employment after the termination takes effect, should, and does, have

13

consequences. Those consequences come into play in connection with the calculation of damages.

As the Supreme Court has held in a related context, "absent special circumstances, the simple rule that the ongoing accrual of backpay liability is tolled when a Title VII claimant rejects the job he originally sought comports with Title VII's policy of making discrimination victims whole." *Ford Motor Co. v. EEOC*, 458 U.S. 219, 238-39 (1982) (footnote omitted). Similarly, we have held that "[a]n employer may toll the running of back pay damages by making an unconditional offer to the plaintiff of a job substantially equivalent to the one he or she was denied, even without an offer of retroactive seniority." *Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 830 (2d Cir. 1992).

Those rulings flow from the employee's obligation to mitigate damages, *Ford Motor Co.*, 458 U.S. at 231, and require an examination of "whether the plaintiff acted reasonably in attempting to gain other employment or in rejecting proffered employment." *Pierce*, 955 F.2d at 830. An employee cannot collect damages for a period of unemployment occasioned by the employee's unreasonable rejection of a good-faith, unconditional offer of restoration to his or her former position and status. On the other hand, as appellate courts

14

confronting these issues have recognized, where the employer's offer is not made in good faith, or where the employee otherwise acted reasonably in rejecting the offer, the offer of renewed employment will not cut off the accrual of damages. *See, e.g., Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 908 (2d Cir. 1997); *Brown v. Ala. Dept. of Transp.*, 597 F.3d 1160, 1183 (11th Cir. 2010). Because such issues are fact-intensive, we cannot and do not attempt to assess at this stage of the litigation how they might play out in this case; whether the rescission of the termination notice was made in good faith, and whether Shultz acted reasonably in refusing to accept the offer to restore her position, are questions for the finder of fact. *See Pierce*, 955 F.2d at 830; *Fiedler v. Indianhead Truck Line Inc.*, 670 F.2d 806, 808 (8th Cir. 1982).

Finally, we note that our holding is based on the facts of this case, and is not without limitations. We need not decide, for example, whether in some circumstances the period of time between a notice of firing and its rescission may be so short as to render the termination *de minimis. Cf., e.g., Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006) (finding no adverse employment action when employee was given a new reporting structure but the employer "rescinded the change the following day in response to [employee's] complaint,

and did so with an apology.") An impulsive "You're fired," followed immediately by a revocation of the firing, would present different circumstances than those of this case. *See Keeton v. Flying J, Inc.,* 429 F.3d 259, 264 (6th Cir. 2005) ("termination lasting only hours" not an adverse employment action).

Here, the Congregation did not attempt to rescind the termination for two weeks. Shultz thus had ample time to experience the dislocation of losing her employment at a particularly vulnerable time, undertake the effort of retaining counsel, and inform the Congregation that she was going to file suit.

Moreover, we note that our holding concerns a notice of termination, and does not apply to other types of potential adverse employment actions that an employer may seek to rescind at a later date. A notice of termination is unlike other types of actions that an employer may take towards an employee in that it announces the complete termination of the employment relationship. To put it mildly, "[e]ven under the most optimal circumstances . . . termination of an employee is likely to give rise to bad feelings and anxiety." *Kelly v. Chase Manhattan Bank,* 717 F. Supp. 227, 235 (S.D.N.Y. 1989). We have held that less significant employment actions taken by an employer, such as placing a counseling letter in an employee file, do not constitute adverse employment

16

actions where they have been rescinded. *Tepperwien v. Entergy Nuclear Operations, Inc.,* 663 F.3d 556, 570 (2d Cir. 2011) (holding that where a counseling letter was placed in an employee file and then removed "the rescinded counseling letter was not a material adverse employment action.").

Under the circumstances of this case, however, the Supreme Court's notice rule compels the conclusion that the notice of termination of Shultz's employment was an adverse employment action.

## II.    Interference with FMLA Rights

Shultz also asserts a claim under the FMLA, contending that her firing after she became pregnant interfered with her rights under the statute. *See* 29 U.S.C. §§ 2612(a), 2615(a)(1). "[T]o prevail on a claim of interference with her FMLA rights, a plaintiff must establish: 1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA." *Graziadio v. Culinary Inst. of Am.,* 817 F.3d 415, 424 (2d Cir. 2016).

The complaint alleges that Shultz was an "eligible employee"; that the Congregation was a "covered employer," within the meaning of the FMLA; that she was entitled under the FMLA to a 12-week leave to give birth to and care for her child; and that "by terminating her employment mere weeks before [she] was scheduled to commence" that leave, the Defendants violated the FMLA and took an action that "clearly deters employees from exercising their rights under the FMLA." App'x at 43-44. The district court dismissed Shultz's FMLA claim on the ground that because her employment had not been effectively terminated, Defendants had not interfered with her FMLA rights.

For essentially the same reasons stated above, we conclude that this was error. We see no reason to construe the FMLA differently from Title VII with respect to whether the rescission of a notice of termination given to a pregnant employee establishes as a matter of law that the notice may not constitute an adverse employment action sufficient to deter or interfere with the employee's exercise of FMLA rights.[3]

---

[3] Defendants argued below that Shultz's FMLA claim failed because, though she had notified the Congregation that she was pregnant, she had not provided any notice of her intention to take leave. The district court did not address this alternative argument for dismissal, App'x at 108, and neither party addresses the issue on appeal. Accordingly, we express no view on whether the allegation in

18

## III.    Constructive Discharge and Hostile Work Environment

The complaint asserts a claim that Shultz was constructively discharged in violation of Title VII. "The constructive-discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that his working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Green,* 136 S. Ct. at 1776 (citation and internal quotation marks omitted). Shultz asserts that "Defendants' discriminatory termination, visible contempt, disingenuous offer of re-instatement, among other facts and circumstances, caused [her] working conditions to become so intolerable that a reasonable person in [her] position would have felt compelled to cease working at the Congregation." App'x at 49.

As the district court noted, however, "the facts alleged in this case [with respect to Defendants' actions after Shultz returned from her honeymoon visibly pregnant] are sparse." App'x at 104. Shultz alleges that, during her termination meeting with Resis, Soloveichik and Lustig, she was met with silence when she

the complaint that Shultz was "scheduled" to take a leave should be construed to allege that she had given notice of her intention to take leave, and leave the issue of notice to the district court, should Defendants raise it either by a renewed motion to dismiss or by a summary judgment motion in due course.

19

expressed her concerns about finding another job while pregnant. Shultz further

alleged that after she received the notice of termination, she overheard a phone

call in which Reiss disparaged her, her name was removed from a wall and a

newsletter, and Soloveichik and Lustig did not speak to her. These acts alone,

occurring over a period of a few weeks, are insufficient to raise an issue of fact

with respect to whether Shultz can meet "the high standard to establish that [s]he

was constructively discharged." *Adams v. Festival Fun Parks*, *LLC*, 560 F. App'x 47,

49 (2d Cir. 2014). "Such a claim requires the employee to show both (1) that there

is evidence of the employer's intent to create an intolerable environment that

forces the employee to resign, and (2) that the evidence shows that a reasonable

person would have found the work conditions so intolerable that he would have

felt compelled to resign." *Id.* (internal quotation marks omitted). Shultz has not

pled sufficient facts arising after the notice of termination to establish that a

reasonable person would have been compelled to resign in these circumstances.[4]

---

[4] These allegations may take on more significance in light of the notice of termination. Given our conclusion that the notice of termination in itself constituted an adverse employment action, the better legal framework for evaluating the significance of the various incidents alleged by Shultz is with respect to the questions of the good faith of Defendants' reinstatement offer and whether, if reinstatement was indeed offered, a reasonable person in Shultz's position would have accepted it, rather than as a separate free-standing claim of

Although the complaint does not set forth a separately-labeled claim for the creation of a hostile work environment, Shultz argues on appeal that the facts alleged give rise to such a claim. We need not address Defendants' argument that Shultz's failure to specifically assert such a claim in the complaint waives the argument,[5] because such a claim would fail in any event, for much the same reasons as does her constructive discharge claim. "In order to establish a hostile work environment claim under Title VII, a plaintiff must . . . show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Rivera v. Rochester Genessee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (internal quotation marks omitted). Assuming the truth of all of the handful of uncomfortable incidents cited by Shultz, none of them taken in isolation is sufficiently severe,

---

constructive discharge.

[5] *But see Green*, 136 S. Ct. at 1789 (Alito, J., concurring in the judgment) (referring to a hostile work environment claim as a "lesser included" claim within a constructive discharge claim). *See also Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 73-74 (2d Cir. 2000) (discussing without resolving whether constructive discharge claim requires plaintiff to prove more severe and pervasive treatment than necessary for hostile environment claim).

and all of them taken together, over a period of just a few weeks, are not sufficiently pervasive, to raise an issue of fact as to whether she suffered a hostile work environment.

## IV.    Retaliation

Shultz's final federal claim is that Defendants retaliated against her in violation of Title VII after she retained counsel and took steps to bring this suit.

A *prima facie* case of retaliation under Title VII requires that the pleading show:   "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn,* 795 F.3d at 316 (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)). We assume, without deciding, that Shultz engaged in a protected activity by retaining counsel and threatening to sue. *See Mandel v. Rofe*, No. 10 CIV. 6045 RMB FM, 2012 WL 1981453, at *5 (S.D.N.Y. May 31, 2012). The Defendants were made aware of that activity on July 30, 2015**.** The question is whether Shultz was subsequently subjected to an adverse employment action that was causally connected to the assumed protected activity.

22

In the context of retaliation, "adverse employment action" is broader than it is in the context of discrimination. *See Hicks,* 593 F.3d at 165. Nevertheless, the employer's conduct must be "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* "Actions that are 'trivial harms' – i.e., 'those petty slights or minor annoyances that often take place at work and that all employees experience'– are not materially adverse." *Tepperwien,* 663 F.3d at 568 (quoting *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 57 (2006)). "Title VII does not protect an employee from 'all retaliation,' but only 'retaliation that produces an injury or harm.'" *Id.* (quoting *Burlington,* 548 U.S. at 67).

Here, the district court correctly concluded that "Shultz has not adequately pleaded that Defendants acted in retaliation for her threat of legal action." App'x at 110. Shultz asserts that there was a "campaign" against her after she threatened legal action, but her allegations, which we take as true, are merely that Reiss made negative comments about her on the phone (which she overheard), that Defendants encouraged employees not to speak with her after her last day at work, that the Congregation continued to claim that she was an employee after her termination in an effort to discredit her, and that the

23

Congregation distributed a negative statement about her after the lawsuit was commenced. These comments by the Defendants, even when viewed together in the light most favorable to Shultz, do not meet the standard for a materially adverse action. Thus, the district court properly dismissed the Title VII retaliation claim.

## V.      State- and City-Law Claims

The district court declined to exercise supplemental jurisdiction over the non-federal claims because it had dismissed Shultz's federal claims.  Because we hold that Shultz did state a plausible claim of discriminatory termination, and interference with her FMLA rights, the District Court should reconsider on remand its decision to decline to exercise supplemental jurisdiction. *See Irrera v. Humpherys,* 859 F.3d 196, 199 n.5 (2d Cir. 2017). Of course we intimate no view on the merits of any such reconsideration.

## CONCLUSION

For the reasons stated above, the judgment of the district court is VACATED, and REMANDED for further proceedings, insofar as it dismissed Shultz's claims for discriminatory termination in violation of Title VII and

24

interference with her exercise of FMLA rights, and declined to exercise

supplemental jurisdiction over her claims under New York State- and City-law.

The judgment is AFFIRMED in all other respects.