*Black v. Buffalo Meat Service, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of July, two thousand twenty-two.

Present:
> DEBRA ANN LIVINGSTON,
> *Chief Judge*,
> JOSÉ A. CABRANES,
> MICHAEL H. PARK,
> *Circuit Judges*.

---

DARCY M. BLACK,

> *Plaintiff-Appellant*,

v.                                                          21-1468

BUFFALO MEAT SERVICE, INC., DBA Boulevard Black Angus, AKA Black Angus Meats, AKA Black Angus Meats & Seafood, ROBERT SEIBERT, DIANE SEIBERT, KEEGAN ROBERTS,

> *Defendants-Appellees*.

---

For Plaintiff-Appellant:        JOSEPHINE A. GRECO, Greco Trapp, PLLC, Buffalo, NY.

For Defendants-Appellees:        ARIANNA E. KWIATKOWSKI (Randolph C. Oppenheimer and Megan E. Bahas, *on the brief*), Barclay Damon LLP, Buffalo, NY.

1

Appeal from an order and judgment of the United States District Court for the Western District of New York (Skretny, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order and judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Darcy M. Black ("Black") appeals from a district court order granting summary judgment to Defendants-Appellees ("Defendants"). *See Black v. Buffalo Meat Serv.*, No. 15-cv-49s, 2021 U.S. Dist. LEXIS 96748 (W.D.N.Y. May 21, 2021) (Skretny, *J.*). Black is a white woman with two biracial children. She worked at Buffalo Meat Service, Inc.—a butcher shop (the "Butcher Shop") owned by Defendants Robert and Diane Seibert (together, the "Seiberts")—from 2005 until 2010. Black asserts claims for hostile work environment and constructive discharge based on race and sex and wage discrimination based on sex under Title VII, 42 U.S.C. § 1981, the Equal Pay Act ("EPA"), and the New York State Human Rights Law ("NYSHRL"). We assume the parties' familiarity with the facts and procedural history of this case and the issues on appeal, which we discuss only as necessary to explain our decision to affirm.

\* \* \*

"Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Zaretsky v. William Goldberg Diamond Corp.*, 820 F.3d 513, 519 (2d Cir. 2016) (quoting Fed. R. Civ. P. 56(a)).[1] We review a district court's grant of summary judgment *de novo*, "construing the evidence in the light

---

[1] Unless otherwise noted, we omit all internal citations, quotation marks, alterations, emphases, and footnotes from citations.

2

most favorable to the non-moving party and drawing all reasonable inferences in its favor." *Ne. Rsch., LLC v. One Shipwrecked Vessel*, 729 F.3d 197, 207 (2d Cir. 2013). We evaluate employment discrimination claims pursuant to Title VII, the NYSHRL, and 42 U.S.C. § 1981 under materially the same substantive standards. *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010); *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). Similarly, "[a] claim of unequal pay for equal work under Title VII and the [NYS]HRL is generally analyzed under the same standards used in an EPA claim." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1312 (2d Cir. 1995).[2]

## I.    Hostile Work Environment Claims

At the start, we conclude that because Black failed to schedule her hostile work environment claims in her bankruptcy proceeding, she lacks standing to assert those claims here. A bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case," 11 U.S.C. § 541(a)(1), including "causes of action owned by the debtor," *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008) (per curiam). "After appointment of a trustee, a debtor no longer has standing to pursue a cause of action that existed at the time the order for relief was entered." *Cadle Co. v. Mangan* (*In re Flanagan*), 503 F.3d 171, 179 (2d Cir. 2007). Instead, "[o]nly the trustee has th[is] authority." *Id.* While "property acquired by the debtor after the filing of a bankruptcy petition generally does not become part of the estate," even "[p]ost-petition property will become property of the estate . . . if it is 'sufficiently rooted in the pre-bankruptcy past.'" *Chartschlaa*, 538 F.3d at 122 (quoting *Segal v. Rochelle*, 382 U.S. 375, 380 (1966)).

---

[2] "[U]nlike an EPA plaintiff," however, "a Title VII plaintiff must also produce evidence of discriminatory animus." *Id.* at 1313.

3

We conclude that there is no genuine dispute that Black's hostile work environment claims are sufficiently rooted in the pre-bankruptcy past that they became part of her bankruptcy estate. In March 2009—almost four years after Black began working at the Butcher Shop—she filed a Voluntary Petition for Chapter 7 Bankruptcy. *See* App'x 246–87. That petition was granted in June 2009, less than one year before Black resigned. *See id.* at 292–95. Black did not list any potential claims against Defendants in her bankruptcy petition. *See id.* at 357. But in this litigation, Black asserts that "Defendants['] unlawful conduct spanned Black's entire employment." *Id.* at 335; *see also id.* at 85–86 (Defendants collecting Black's testimony that she regularly experienced and observed race- and sex-related discriminatory conduct from 2005 to 2008); *id.* at 335–37 (Black admitting that the alleged conduct occurred regularly during that period); *Black*, 2021 U.S. Dist. LEXIS 96748, at *59 ("Black alleges that during much of her tenure, inappropriate statements were made about African American customers, job applicants, [and] the boyfriend[s] or husband[s] of Caucasian coworkers."). We therefore conclude that Black does not genuinely dispute that Defendants' post-petition discriminatory conduct was "sufficiently rooted in the pre-bankruptcy past and so little entangled with [Black's] ability to make an unencumbered fresh start" that the related cause of action belonged to Black's bankruptcy estate, and that Black lacks standing to pursue those claims here. *Segal*, 382 U.S. at 380.[3]

---

[3] Black moved to reopen her bankruptcy proceeding, and the bankruptcy court granted that motion on June 16, 2022. We agree with Black that these developments have "no effect on this appeal," Black Supp. Letter Br. 1, because they do not alter our conclusion that Black's hostile work environment claims are rooted in the pre-bankruptcy past. And although the newly-appointed bankruptcy trustee would have standing to pursue these claims, Black did not move to substitute her as a party. *See* Fed. R. App. P. 43(b).

Given our ultimate decision to affirm, Defendants' motion to strike documents related to the bankruptcy proceeding that Black submitted after oral argument is DENIED as moot.

## II. Constructive Discharge Claims

Next, even assuming Black has standing to pursue her constructive discharge claims, we conclude that they fail because she has not shown that her working conditions were objectively intolerable or that Defendants intended to force her to resign by creating an intolerable work environment. "Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir. 1996). To prove a constructive discharge claim, a plaintiff must satisfy two requirements. First, the plaintiff must "show[] that a reasonable person would have found the work conditions so intolerable that he would have felt compelled to resign." *Shultz v. Congregation Shearith Israel*, 867 F.3d 298, 308 (2d Cir. 2017); *see also Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004) (holding that this inquiry is "objective"). Second, the employee must produce "evidence of the employer's intent to create an intolerable environment that forces the employee to resign." *Shultz*, 867 F.3d at 308; *see also Petrosino v. Bell Atl.*, 385 F.3d 210, 230 (2d Cir. 2004) (noting that an employee must "at least demonstrate that the employer's actions were deliberate and not merely negligent or ineffective"). The standard for a constructive discharge claim "is higher than the standard for establishing a hostile work environment." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 725 (2d Cir. 2010).

Black has not adduced evidence that meets "the high standard to establish that she was constructively discharged." *Shultz*, 867 F.3d at 308. Her central argument is that her work conditions became objectively intolerable when Jamie LaPress, a co-worker, used a racial slur in referring to her children. In general, "[f]or racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity, meaning that

5

instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments. *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). We have never held that the one-time use of a racial slur by a supervisor to a subordinate "by itself, support[s] a claim for a hostile work environment." *Daniel v. T & M Prot. Res., LLC*, 689 F. App'x 1, 2 (2d Cir. 2017) (summary order) ("declin[ing] to confront th[is] issue"); *see also Albert-Roberts v. GGG Constr., LLC*, 542 F. App'x 62, 64 (2d Cir. 2013) (summary order); *Miller v. N.Y. State Police*, No. 20-3976, 2022 U.S. App. LEXIS 10354, at *4–6 (2d Cir. Apr. 18, 2022) (summary order). In any event, we need not reach that question because LaPress was Black's coworker, not her supervisor. *See Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014) (stating that "perhaps no single act can more quickly alter the conditions of employment . . . than the use of an unambiguously racial epithet . . . by a supervisor in the presence of his subordinates"); *see also Negron v. Rexam Inc.*, 104 F. App'x 768, 770 (2d Cir. 2004) (summary order) (affirming summary judgment for defendants where plaintiff presented evidence that "on a handful of occasions his coworker addressed him using a racial epithet, including once over the loudspeaker"). Thus, consistent with the general rule in *Schwapp*, no reasonable jury could find that this "isolated incident[] of racial enmity" created a hostile work environment. 188 F.3d at 110. And given that the standard for a constructive discharge claim "is higher than the standard for establishing a hostile work environment," *Fincher*, 604 F.3d at 725, Black's attestation that LaPress slurred her children is insufficient to create a genuine issue of material fact on her constructive discharge claim.

Nor has Black shown that Defendants' actions in response to LaPress's alleged conduct were more than "merely negligent or ineffective." *Petrosino*, 385 F.3d at 230. Black contends that "Defendants[] fail[ed] to take appropriate remedial action" when she complained to them

6

about LaPress's slur. Appellant's Br. 43. But Black's arguments show, at most, that Defendants' response was ineffectual. Black points to no evidence from which a reasonable factfinder could infer that Defendants' response—even if inadequate—was *intended* to "force[] [her] to resign." *Shultz*, 867 F.3d at 308. For those reasons, we affirm the district court's grant of summary judgment on Black's constructive discharge claims.

## III. Wage Discrimination Claims

We next conclude that Defendants are entitled to summary judgment on Black's wage discrimination claims because Black has not adduced evidence that she and her alleged male comparators had substantially similar job duties. To prove a prima facie case of wage discrimination under the EPA, Title VII, and the NYSHRL, a plaintiff must show: "i) the employer pays different wages to employees of the opposite sex; ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and iii) the jobs are performed under similar working conditions." *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999). "To satisfy this standard, a plaintiff must establish that the jobs compared entail common duties or content, and do not simply overlap in titles or classifications." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 255 (2d Cir. 2014).

Black has failed to adduce evidence establishing a prima facie case of wage discrimination because she has not shown that the male comparators she identifies "perform[ed] equal work on jobs requiring equal skill, effort, and responsibility." *Belfi*, 191 F.3d at 135. Defendants submitted employment records to the EEOC showing that Black was not paid less than similarly situated male employees. *See* App'x 959–65. Indeed, the EEOC's "review of hourly rates assigned of both male and female employees revealed that [Black] and other females were paid at a higher salary than a number of male employees." *Id.* at 136. And although these records

7

showed that Black was paid less than certain male employees, the EEOC found that the wages of Butcher Shop employees depended on "seniority, previous experience, additional duties assigned, and other factors unrelated to gender." *Id.*; *see also id.* at 89–90 (collecting record citations to deposition testimony showing that Black and her alleged male comparators performed different job duties). The EEOC thus concluded that "[n]one of the information" it "obtained during [its] investigation substantiated" Black's charge "that females were paid at a lower hourly rate than males," and that "the evidence obtained during the investigation [did] not establish a violation of Title VII and the EPA with respect to wages disparity." *Id.* at 136.

Black disagrees, pointing to Diane Seibert's testimony that Butcher Shop employees would do "whatever needed to be done" *id.* at 567, and that the Butcher Shop "hire[s] employees to do work, to do labor" and is "not specific when they are hired," *id.* at 191. Based on that testimony, Black contends that Diane Seibert "admitted that all of Defendants' employees are comparable because they are all expected to do any work as needed." Appellant's Br. 19.

We are not persuaded. Diane Seibert also testified that the Butcher Shop management monitored "where [employees] worked the most," App'x 565, such as if they "worked on the counter, . . . in the pack room, [or] if they did cleanup," *id.* at 564. Indeed, she testified that Black "was hired to work on the counter." *Id.* at 565. And contrary to Black's suggestion that there were no relevant differences between employees, when Diane Seibert was asked whether the employees the Butcher Shop hired were "interchangeable," she answered, "[f]or some things." *Id.* at 566. Diane Seibert's testimony thus establishes that while the Butcher Shop did not give employees formal job titles and expected employees to help where needed, it did differentiate employees based on the type of work they primarily performed—and paid its workers commensurate with their job duties. Specifically, it is undisputed that while Black in addition to packing meat

worked primarily at the front counter, her designated comparator LaPress unloaded products, made sausage, operated machinery, cut meat, and operated the smoker, her designated comparator Leible made sausage and cut meat, and also had longer tenure, and her designated comparator Round made deliveries. Black does not dispute that she lacked meat-cutting training and did not perform these other duties. Black has thus failed to adduce evidence from which a reasonable jury could conclude that she "perform[ed] equal work on jobs requiring equal skill, effort, and responsibility," *Belfi*, 191 F.3d at 135, relative to the male comparators she identifies.[4]

## IV.   Supplemental Jurisdiction

Because we affirm the district court's grant of summary judgment on Black's federal-law claims, we also conclude that the district court did not abuse its discretion by declining supplemental jurisdiction over her state-law claims. *See Valencia v. Sung M. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). As the district court held, the dismissal of Black's NYSHRL claims is therefore "without prejudice" to refiling in state court. *Black*, 2021 U.S. Dist. LEXIS 96748, at *84; *see, e.g.*, *Volmar v. N. Shore Hosp.*, 216 F. App'x 136, 138 (2d Cir. 2007) (summary order) ("[O]nce [a plaintiff]'s federal claims were dismissed on motion, any alleged state-law claims should have

---

[4] We do not address the additional arguments Black raises in her reply brief because "arguments not made in an appellant's opening brief are waived even if the appellant pursued those arguments in the district court or raised them in a reply brief." *JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005).

been dismissed without prejudice on the ground that the district court declined to exercise supplemental jurisdiction over them.").

* * *

We have considered Black's remaining arguments and conclude that they lack merit. We therefore **AFFIRM** the order and judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

10